**RECEIVED**

MAR 2 2 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF COLUMBIA

**RECEIVED**

MAR 2 2 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | | |
|---|---|---|
| Jack D Thrasher | ) | |
| | ) | Case No: 1:06-cv-01075 |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | **MOTION FOR RELIEF FROM** |
| | ) | **ORDER OF DISMISSAL UNDER** |
| UNITED STATES (Government), | ) | **FED.R.CIV.P. 60(b)(3), (6)** |
| | ) | |
| Defendant. | ) | |

Plaintiff seeks relief from the Order of dismissing the above-captioned action on the basis

that said Order was obtained by means specified in Fed.R.Civ.P 60(b)(3) and (6).

Fed.R.Civ.P 60(b) states:

On motion and upon such terms as are just, the court may relieve a party or
a party's legal representative from a final judgment, order, or proceeding for
the following reasons: ***(3) fraud (whether heretofore denominated intrinsic
or extrinsic), misrepresentation, or other misconduct of an adverse party; ***
or (6) any other reason justifying relief from the operation of the judgment.

Plaintiff asserts that defendant, by and with the active assistance of counsel,

perpetrated a fraud upon the Court, through misrepresentation of fact, law, and legal

precedent to obtain the said Order. This motion is supported by the questions, alternative

questions, and supplemental questions presented herein, and discussed more fully in

Plaintiff's MEMORANDUM IN SUPPORT OF MOTION FOR RELIEF FROM ORDER OF

DISMISSAL UNDER FED.R.CIV.P. 60(b)(3), (6), (hereinafter, "Relief Memo") and by the

Exhibits incorporated therein.

## QUESTION PRESENTED

Did the defendant, by and with the active assistance of counsel, misrepresent the status of the Court's subject matter jurisdiction?

## DISCUSSION

As discussed more fully in Plaintiff's RELIEF MEMO, the Court's *subject matter* jurisdiction was verified by the Supreme Court in *Arbaugh v. Y & H Corp.*, 126 S.Ct. 1235 (2006)[1], decided February 22, 2006, and that precedent was cited by the District Court in *Turner v. United States*, 429 F.Supp.2d 149 (D.D.C. 2006), in *Lindsey v. United States*, 448 F.Supp.2d 37 (D.D.C. 2006), and their progeny.

## QUESTION PRESENTED

Was counsel's assertion with respect to the Declaratory Judgments Act (DJA) a fraud upon the Court?

## DISCUSSION

As discussed more fully in Plaintiff's RELIEF MEMO, if counsel's assertions of DJA prohibition are correct, 7433 is and was, from the enactment of TBOR I, and through both amendments, null and void, making Congress' enactments of TBOR I, TBOR II, and TBOR

---

[1]*Arbaugh*'s effect on "failure to state a claim" is addressed below, and discussed more fully in Plaintiff's RELIEF MEMO, ¶ ____.

III sham acts, and counsel's arguments with respect to administrative exhaustion, service of process, etc., so much window dressing to hide the sham.

## ALTERNATIVE QUESTION PRESENTED

Can Congress' enactment of the various Taxpayers Bill(s) of Rights (IRC section 7433) be construed harmoniously with the Declaratory Judgments Act's internal exception to federal taxes?

## ALTERNATIVE DISCUSSION

As discussed more fully in Plaintiff's RELIEF MEMO, it is clear that the Declaratory Judgments Act and the current IRC § 7433 (TBOR III) each affect litigation in respect of federal taxes. What is not as clear is how these two Acts of Congress are to be harmoniously construed. In *Wachovia Bank, N. A. V. Schmidt* , ___ U.S.___, (04-1186, decided January 17, 2006), the Supreme Court provided guidance when - citing *Erlenbaugh v. United States*, 409 U.S. 239, 243, 244 - the *Wachovia* Court reiterated the long-standing principle [2] that statutes regarding the same subject matter should be construed *in pari materia*.

## QUESTION PRESENTED

Was dismissal on grounds of "failure to state a claim" under Fed.R.Civ.P. 12(b)(6) premature, in the context of "notice pleadings" under Fed.R.Civ.P 8(a), *Conley v. Gibson*,

---

[2]Cases cited in *Erlenbaugh* include *United States v. Freeman*, 3 How. 556, 564 (1845); *United States v. Stewart*, 311 U.S. 60, 64 (1940).

355 U.S. 41, and Fed.R.Civ.P 12(h)(2)?

## DISCUSSION

In *Arbaugh v. Y & H Corp.*, 126 S.Ct. 1235 (2006), the Supreme Court examined "essential element of a claim" with respect to factual matters. *Arbaugh*, at 1240. Citing to *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U. S. 133, the *Arbaugh* Court reiterated:

> "If satisfaction of an essential element of a claim is at issue, however, the jury is the proper trier of contested facts."

Plaintiff asserts that the Complaint met the "notice pleading" requirements set forth in Fed.R.Civ.P. 8(a), and *Conley v. Gibson*, 355 U.S. 41[3], and that defendant's Motion to Dismiss, insofar as it asserted "failure to state a claim", pre-empted the jury's authority as the "proper trier" of the contested "essential element" of exhaustion of "*administrative remedies* available " as described in IRC § 7433(d)[4], [5]. Further,

Defendant could not seriously assert prejudice by the jury's trial of the factual element, since Fed.R.Civ.P 12(h)(2) allows a Motion to Dismiss for "failure to state a claim"

---

[3] "(b) Failure of the complaint to set forth specific facts to support its general allegations of discrimination was not a sufficient [355 U.S. 42] ground for dismissal of the suit, since the

Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim." Pp. 47-48.

[4] Plaintiff asserts that "the court" contemplated in IRC § 7433(d) comprises, for purposes of factual determinations, both the judge and the jury.

[5] The Congressional language of 7433(d) is further addressed below.

any time prior to judgment, to wit:

> "A defense of failure to state a claim upon which relief can be granted...may be made in any pleading permitted or ordered under Rule 7(a)[6], or by motion for judgment on the pleadings, <u>or at the trial on the merits</u>." Fed.R.Civ.P 12(h)(2) (emphasis added)

7433(d)'s language - "unless the court determines" - in the common English to which *Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837 (1984) referred, Id., 861, calls for a determination of fact; clearly within the province of the jury. *Arbaugh*, 1240; *Reeves*. Thus, motion to dismiss on grounds of "failure to state a claim" can be, and, based upon the Congressional language, <u>is</u>, more properly brought <u>after</u> the Court (see footnote 7) has had the opportunity to make a factual determination with respect to exhaustion of <u>available</u> administrative remedies.

## SUPPLEMENTAL QUESTION PRESENTED

Are "general allegations", in the context of the Fed.R.Civ.P 8(a) "notice Pleadings" Rule, as interpreted in *Conley v. Gibson*, 355 U.S. 41, and reiterated in *Jones v Bock*, __ U.S. _____, (Decided: January 22, 2007) (purportedly made by a multitude of Plaintiffs), sufficient to establish a presumption of a pattern of unlawful activity?

## DISCUSSION

---

[6]"Pleadings permitted" are limited to "complaint and an answer; a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third-party complaint, if a person who was not an original party is summoned under the provisions of Rule 14; and a third-party answer, if a third-party complaint is served. <u>No other pleading shall be allowed</u>, except that the court may order a reply to an answer or a third-party answer." (Emphasis added)

Defendant, by and with the assistance of counsel, raised the issue that the allegations in the instant case are similar, if not identical, to dozens of other cases filed to this Court. Plaintiff, concerned only with the instant case, asserts that any alleged similarity of allegations in other cases is irrelevant in respect of the instant case, and draws the Court's attention to the fact that the alleged redundancy of such "general allegations", especially in the numbers asserted by defense counsel, strongly indicates a pattern of unlawful activity on the part of defendant's agency. Acts generally complained of in the Verified Complaint in the instant case arguably include, or necessarily lead, if true, to the requisite two (2) acts listed in 18 U.S.C. § 1961(1), such as 1) extortion, in forcing Plaintiff to make financial "arrangements" to avoid attack on property, and acts indictable under Title 18, United States Code: §§ 1028, 1341, 1343, 1344, 1503, 1510, 1511, 1512, 1513, and 1951, if committed by any other person, 18 U.S.C. § 1961(3) or enterprise 18 U.S.C. § 1961(4).

## QUESTION PRESENTED

Is defendant, with the active assistance of counsel, "reading into" section 7433 language that Congress had included in TBOR I, totally removed from TBOR II, and intentionally omitted from TBOR III?

## DISCUSSION[7]

---

[7] The following is a direct facial challenge to 26 CFR 301.7433-1

MOTION FOR RELIEF FROM ORDER OF
DISMISSAL UNDER FED.R.CIV.P. 60(b)

TBOR I (1988) expressly withheld jurisdiction in the absence of a prior exhaustion of administrative remedies.  TBOR II, Public Law 104-168, 110 Stat. 1465 (1996) specifically removed that prior exhaustion requirement, providing for mitigation of damages in the absence of exhaustion.  TBOR III (1998, in Public Law 105-206, §§ 3000, 3102) specified only that "A judgment for damages shall not be awarded under subsection (b) *unless the court determines* that the plaintiff has exhausted the administrative remedies *available* to such plaintiff within the Internal Revenue Service."  <u>26 USC § 7433(d)</u> (emphases added).

It appears that defendant's insistence (in the Motion to Dismiss, citing the regulation) that administrative remedies must be exhausted "prior to" commencement of a civil action relies solely upon language removed by Congress in 1996; no such "prior exhaustion" language was added in 7433's current incarnation.

## QUESTION PRESENTED

Is Treasury Decision 9050, 68 FR 14320, Mar. 25, 2003, in merely <u>amending</u> Treasury Decision 8392, 57 FR 3536, Jan. 30, 1992; 57 FR 5931, Feb. 18, 1992, a reasonable interpretation of P.L. 105-206, § 3102 under the deferential framework of *Chevron U.S. A. Inc. v. Natural Resources Defense Council*, Inc., 467 U.S. 837?

## DISCUSSION

As discussed more fully in Plaintiff's RELIEF MEMO, Plaintiff asserts that Treasury Decision 9050 (the current 26 C.F.R. § 301.7433-1) is 1) an unreasonable interpretation

of Public Law 105-206, § 3102; exceeds the authority of Public Law 105-206, § 3102 by reinserting the "may not be maintained" ("prior exhaustion") language of TBOR I; that Treasury Decision 9050  2) impermissibly extends the operation of the exhaustion requirement; that the regulation 3) frustrates Congress' intent in creating, and amending, 7433; and that it 4) effectively converts a "7433 damages" claim into a "7422 refund" claim, effecting an unauthorized "stealth repeal" of TBOR III by regulation.

## QUESTION PRESENTED

Was defendant's Anti-Injunction Act challenge frivolous, in the face of allegations meeting at least 3 of the AIA's 14 statutory exceptions?

## DISCUSSION

The Anti-Injunction Act contains 14 specific exceptions to its prohibition:

> Except as provided in sections 6015(e), 6212(a) and (c), 6213(a), 6225(b), 6246(b), 6330(e)(1), 6331(i), 6672(c), 6694(c), 7426(a) and (b)(1), 7429(b), and 7436, no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.

Plaintiff specifically alleged, Complaint, ¶ Count 11, that defendant failed to provide Notice of Deficiency for in accordance with IRC § 6212, arguably "within the rubric of 26 U.S.C. § 6212(a), an exception to the AIA.

Plaintiff specifically alleged, Complaint, ¶ count 12, that defendant failed to give notice of the last day for filing for redetermination of such phantom deficiency in accordance with IRC § 6213, an exception to the AIA.

Plaintiff specifically alleged, Complaint, ¶ 27, that defendant failed to afford Plaintiff a meaningful Collection Due Process in accordance with IRC 6230/6330; CDP hearings under 6320 (liens) are to be conducted under 6330; 6330(e) is an exception to the AIA.

## EXHAUSTION REQUIREMENT

As discussed more fully in Plaintiff's RELIEF MEMO, Plaintiff has exhausted all available administrative remedies.

Based upon the foregoing, Plaintiff respectfully seeks relief from Order of November 11, 2006, dismissing the above-captioned action and a finding that the regulation is not in conformity with the statute and is therefore unenforceable..

Respectfully Submitted

Dated _March 20th_, 2007

Jack D Thrasher

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the forgoing on:

Pat S Genis
U.S. Dept of Justice
P.O. Box 277
Washington D.C. 20044

Dated _MARCH 21st_, 2007

Jack D Thrasher

# United States District Court
## IN THE DISTRICT OF COLUMBIA

Jack D Thrasher                                     )
,                                                   )        Case No: 1:06-cv-01075
                                                    )
                           Plaintiffs,              )        **MEMORANDUM IN SUPPORT OF**
      v.                                            )        **MOTION FOR RELIEF FROM**
                                                    )        **ORDER OF DISMISSAL UNDER**
UNITED STATES (Government),                         )        **FED.R.CIV.P. 60(b)(3), (6)**
                                                    )
                           Defendant.               )

Plaintiff seeks relief from the Order of November 17, 2006, dismissing the above-captioned action on the basis that said Order was obtained by means specified in Fed.R.Civ.P 60(b)(3) and (6).

Fed.R.Civ.P 60(b) states:

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ***(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; *** or (6) any other reason justifying relief from the operation of the judgment.

Plaintiff asserts in this Motion that defendant, by and with the active assistance of counsel, perpetrated a fraud upon the Court, through misrepresentation of fact, law, and legal precedent, to obtain the said Order. This motion is supported by the questions, alternative questions, and supplemental questions presented in this Motion which this MEMORANDUM IN SUPPORT OF MOTION FOR RELIEF FROM ORDER OF DISMISSAL

UNDER FED.R.CIV.P. 60(b)(3), (6), (hereinafter, "Motion") and the Exhibits incorporated herein, support.

## QUESTION PRESENTED

Did the defendant, by and with the active assistance of counsel, misrepresent the status of the Court's subject matter jurisdiction?[1]

## DISCUSSION

The Court is clearly aware that *subject matter* jurisdiction was verified by the Supreme Court in *Arbaugh v. Y & H Corp.*, 126 S.Ct. 1235 (2006), decided February 22, 2006, and that precedent was cited by the District Court in *Turner v. United States*, 429 F.Supp.2d 149 (D.D.C. 2006), in *Lindsey v. United States*, 448 F.Supp.2d 37 (D.D.C. 2006), and their progeny. Arbaugh was decided February 22, 2006, and preceded defendant's motion to dismiss, yet defendant, with the active assistance of counsel, presented "lack of subject matter jurisdiction" as a primary ground for dismissal, demonstrating at least minimal contempt for the findings of this Court. That such contempt resulted in an erroneous order is made clear by recent Supreme Court jurisprudence.

## QUESTION PRESENTED

Was dismissal for "failure to state a claim" under Fed.R.Civ.P. 12(b)(6) premature, in the context of "notice pleadings" under Fed.R.Civ.P 8(a), *Conley v. Gibson*, 355 U.S. 41, and Fed.R.Civ.P 12(h)(2)?

## DISCUSSION

In *Arbaugh v. Y & H Corp.*, 126 S.Ct. 1235 (2006), the Supreme Court examined

---

[1] The Court's *in lieu* dismissal for failure to state a claim is addressed below.

"essential element of a claim" with respect to factual matters. *Arbaugh*, at 1240.

This Court (*Turner, etc.*) has already determined that "exhaustion" is a factual issue, and the Court dismissed upon defendant's assertion that Plaintiff failed to plead exhaustion. However, Plaintiff was under no obligation to so plead.

In *Jones v Bock* (Nos. 05-7058 and 05-7142) __ U.S. _____, (Argued: October 30, 2006 -- Decided: January 22, 2007), the Honorable Roberts, C.J., opined that:

> "Failure to exhaust is better viewed as an affirmative defense. Federal Rule of Civil Procedure 8(a) requires simply a 'short and plain statement of the claim' in a complaint..."

Plaintiff asserts that the Verified Complaint met the "notice pleading" requirements set forth in Fed.R.Civ.P. 8(a), as interpreted in *Conley v. Gibson*, 355 U.S. 41[2], and reiterated in *Jones*.

Writing for the Court, the Chief Justice explained that,

> "The fact that the [statute at issue]...is silent on the issue whether exhaustion must be pleaded or is an affirmative defense, is strong evidence that the usual practice should be followed, and the practice under the Federal Rules is to regard exhaustion as an affirmative defense..."

IRC section 7433, as amended by TBOR III, is silent on the issue whether exhaustion must be pleaded. The *Jones* Court also reiterated:

> "Courts should generally not depart from the Federal Rules' usual practice based on perceived policy concerns. See, e.g., Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U. S. 163,"[3]

---

[2] "(b) Failure of the complaint to set forth specific facts to support its general allegations of discrimination was not a sufficient [355 U.S. 42] ground for dismissal of the suit, since the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim." Pp. 47-48.

[3] Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U. S. 163 Held: A federal court may not apply a "heightened pleading standard" -- more stringent than the usual pleading requirements of Federal Rule of Civil Procedure 8(a)

and,

> "Given that the [statute at issue] does not itself require plaintiffs to plead
> exhaustion, such a result 'must be obtained by amending the Federal Rules,
> and not by judicial interpretation.' Leatherman, supra, at 168. Pp. 10-16."

Defendant, a fiction of law, is bound by such law, and by the Federal Rules of Civil

Procedure.   Neither the Taxpayer Bill of Right III, nor Rule 8, requires Plaintiff to

"demonstrate", "plead" or otherwise "assert" exhaustion; defendant must, in "the usual

practice", raise such matter as an <u>affirmative defense</u>, and "place before the jury sufficient

proof to generate a jury instruction on the particular defense theory sought"[4], and,

notwithstanding recent cases dismissing on grounds of  "failure to state a claim", the

*Arbaugh* Court, citing to *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U. S. 133,

reiterated:

> "If satisfaction of an essential element of a claim is at issue, however, the
> jury is the proper trier of contested facts."

The jury is the proper trier, *Arbaugh*; *Reeves*, of the "'short and plain statement of

the claim' in a complaint..." Federal Rule of Civil Procedure 8(a), *Conley*; and of any

affirmative defense. *Jones.*

Pretrial dismissal for "failure to state a claim", pre-empted the jury's authority as the

"proper trier" of the contested "essential element" of exhaustion of "*administrative remedies*

<u>available </u>" as described in 7433(d)'s language; "unless the court determines" - in the

common English to which *Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837 (1984) referred, Id.,

---

[4]UNDERSTANDING AFFIRMATIVE DEFENSES, David Beneman, Maine CJA Resource Counsel, Levenson,
Vickerson & Beneman

861 - calls for a determination of fact; clearly within the province of the jury.[5]

## QUESTION PRESENTED

Was counsel's assertion with respect to the Declaratory Judgments Act (DJA) a fraud upon the Court?

## DISCUSSION

Counsel asserted (and the Court accepted the assertion) that the DJA prohibits the Court from "declaring rights" by determining whether Internal Revenue Service disregarded provisions of law and regulation; the "exclusive remedy" for which Congress enacted the various Taxpayers' Bill(s) of Rights (creating § 7433). However, if counsel's assertions of DJA prohibition are correct, Congress' enactments of TBOR I, TBOR II, and TBOR III were all sham acts, to wit: *If* the DJA prohibits the Court from hearing a case under IRC § 7433 because it would be declaring rights in respect of federal taxes, such prohibition is absolute, and 7433 is and was, from the enactment of TBOR I, and through both amendments, null and void (making counsel's arguments with respect to administrative exhaustion, service of process, etc., so much window dressing to hide the sham).

## ALTERNATIVE QUESTION PRESENTED

Can Congress' enactment of the various Taxpayers Bill(s) of Rights (IRC section

---

[5]     Defendant could not seriously assert prejudice by the jury's trial of the factual element, since the jury could, upon examination of all relevant facts, find that available remedies were not exhausted; Fed.R.Civ.P 12(h)(2) allows a Motion to Dismiss for "failure to state a claim" any time prior to judgment, to wit:

"A defense of failure to state a claim upon which relief can be granted...may be made in any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits." Fed.R.Civ.P 12(h)(2) (emphasis added)

7433) be construed harmoniously with the Declaratory Judgments Act's internal exception to federal taxes?

## ALTERNATIVE DISCUSSION

The Declaratory Judgments Act was enacted June 25, 1948, ch. 646, 62 Stat. 964; but was based upon title 28, U.S.C., 1940 ed., § 400, and apparently has roots going back as far as 1911.  DJA's current incarnation has been amended 10 times.

Internal Revenue Code section 7433 was placed into the Internal Revenue Code as the "exclusive remedy" for IRS disregard of law and regulation by the Taxpayer Bill of Rights (TBOR I) in 1988, and has been amended twice, in 1996 (TBOR II, Public Law 104-168, 110 Stat. 1465) and most recently in 1998 (TBOR III, included in the IRS Restructuring and Reform Act of 1998, Pub. Law 105-206).

It is clear that the Declaratory Judgments Act  and the current IRC § 7433 (TBOR III) each affect litigation in respect of federal taxes.  What is not as clear is how these two Acts of Congress are to be harmoniously construed.  In *Wachovia Bank, N. A. V. Schmidt* , ___ U.S.___, (04-1186, decided January 17, 2006), the Supreme Court provided guidance when, citing *Erlenbaugh v. United States*, 409 U.S. 239, 243, 244, the *Wachovia* Court reiterated the long-standing principle [6] that statutes regarding the same subject matter should be construed *in pari materia*.

To the extent that IRC § 7433 and the Declaratory Judgments Act both operate upon the Court's jurisdiction in respect of federal taxes, *Erlenbaugh,* 409 U.S. at 243,  is instructive:

---

[6]Cases cited in *Erlenbaugh* include *United States v. Freeman*, 3 How. 556, 564 (1845); *United States v. Stewart*, 311 U.S. 60, 64 (1940).

"a later act [409 U.S. 244] can . . . be regarded as a legislative interpretation of [an] earlier act . . ."

"and 'is therefore entitled to great weight in resolving any ambiguities and doubts.' United States v. Stewart, supra, at 64-65. See also, e.g., Hunter v. Erickson, 393 U.S. 385, 388 (1969); United States v. Freeman, supra, at 565."

The *Erlenbaugh* Court emphasized, at 244:

"The rule is but a logical extension of the principle...that whenever Congress passes a new statute, it acts aware of all previous statutes on the same subject, *cf.* Allen v. Grand Central Aircraft Co., 347 U.S. 535, 541-552 (1954)."

Based upon the foregoing, Plaintiff respectfully asserts that IRC § 7433 (TBOR I, TBOR II, and, material to the instant case, TBOR III) can only be harmoniously construed with the DJA as exceptions to DJA's "federal taxes" prohibition, and that counsel, if not the defendant, knew as much when presenting the motion to dismiss for lack of subject matter jurisdiction under the DJA.

## QUESTION PRESENTED[7]

Is defendant, with the active assistance of counsel, "reading into" section 7433 language that Congress had included in TBOR I, totally removed from TBOR II, and intentionally omitted from TBOR III?

## DISCUSSION

The first Taxpayer Bill of Rights (TBOR I, 1988) expressly withheld jurisdiction in the absence of a prior exhaustion of administrative remedies, but was silent on the issue whether exhaustion must be pleaded. TBOR II, Public Law 104-168, 110 Stat. 1465

---

[7] The following is a direct facial challenge to 26 CFR 301.7433-1

(1996) specifically removed TBOR I's prior exhaustion requirement, providing for mitigation of damages in the absence of exhaustion; TBOR II was also silent on the issue whether exhaustion must be pleaded.  TBOR III (1998, in Public Law  105-206, §§ 3000, 3102) specified only that "A judgment for damages shall not be awarded under subsection (b) *unless the court determines* that the plaintiff has exhausted the administrative remedies *available* to such plaintiff within the Internal Revenue Service."  26 USC § 7433(d) (emphases added), and remained silent on the issue whether exhaustion must be pleaded.

It appears that defendant's insistence (in the Motion to Dismiss, citing the regulation) that administrative remedies must be exhausted "prior to" commencement of a civil action relies solely upon language removed by Congress in 1996; no such "prior exhaustion" language was added in 7433's current incarnation, and also remained silent on the issue whether exhaustion must be pleaded.

## SUBSUMED QUESTION PRESENTED

Is Treasury Decision 9050, 68 FR 14320, Mar. 25, 2003, in merely amending Treasury Decision 8392, 57 FR 3536, Jan. 30, 1992; 57 FR 5931, Feb. 18, 1992, a reasonable interpretation of P.L. 105-206, § 3102 under the deferential framework of *Chevron U.S. A. Inc. v. Natural Resources Defense Council*, Inc., 467 U.S. 837?

## DISCUSSION

As shown in Title 26 of the Code of Federal Regulations, IRS failed to prescribe the administrative procedure necessary to give effect to section 7433, as originally added, for over three years after Congress enacted TBOR I.  Treasury Decision 8392, 57 FR 3536, necessary from and after November 10, 1988, was not promulgated until January 30,

1992, and it appears that the regulation was ineffective until February 18, 1992. "Remedy", under the 1988 Act was unavailable until 1992.

In respect of Congress' removal of the jurisdictional prohibition in TBOR II (1996), Plaintiff has been unable to find an amended final regulation, but was able to find the "Notice of proposed rulemaking" discussing TBOR II, attached as Exhibit 1, and incorporated by reference. The "Notice of proposed rulemaking" clearly shows that IRS was aware of Congress' removal of the jurisdictional prohibition.

It must be noted that Treasury Decision 9050, as published, 68, FR 14320, purported to amend Treasury Decision 8392 (the 1992 regulation) indicating that no "final" regulation implementing the 1996 Act (TBOR II) ever became effective.

Treasury Decision 9050 was itself not effective until March 25, 2003, more than four years and nine months after Congress' enactment of P.L. 105-206, § 3102 (TBOR III). In fact, the regulation was not even proposed until March 5, 2002. Federal Register: Volume 67, Number 43, Page 9929-9934. "Remedy", under the 1998 Act was unavailable until 2003.

This period of "unavailability" of administrative remedy provides the context in which the March 25, 2003 version of the regulation re-implements TBOR I's "prior administrative exhaustion" requirement, without the statutory framework necessary to such re-implementation.

Plaintiff asserts that Treasury Decision 9050 (the current 26 C.F.R. § 301.7433-1) is 1) an unreasonable interpretation of Public Law 105-206, § 3102; 2) exceeds the authority of Public Law 105-206, § 3102 by reinserting the "may not be maintained" ("prior

exhaustion") language of TBOR I; 3) impermissibly extends the operation of the exhaustion requirement; 4) frustrates Congress' intent in creating, and amending, 7433; and that it 5) effectively converts a "7433 damages" claim into a "7422 refund" claim, effecting an unauthorized "stealth repeal" of TBOR III by regulation.

THE REGULATION IS AN UNREASONABLE INTERPRETATION

The current regulation requires that an injured Citizen wait up to six months for a ruling on an administrative claim before bringing a civil suit, failing, even under the deferential framework of *Chevron U.S. A. Inc. v. Natural Resources Defense Council*, Inc., 467 U.S. 837, the standard of reasonable interpretation of a statute, and is intended to frustrate a 7433 Plaintiff, to wit:

Few people, if any at all, could withstand the six month period for reasons known to, and published by, the National Taxpayer Advocate.[8] This half-year waiting period is extreme. In almost every other instance, IRS is limited to (and may limit to) 30 days. Examples include Collection Due Process Hearing requests (30 days, imposed by Congress); pre-Notice of Deficiency letters (30 days); even the opportunity to petition for redetermination of a Notice of Deficiency has a window of only 90 days. Yet IRS chose to give itself 183 days to decide upon an administrative damages claim, asserting, in some instances, the need for time to gather and review its records in relation to the claim. This assertion is clearly shown as false by the sworn testimony of IRS Records Custodian Robert Dean in UNITED STATES OF AMERICA, v. RICHARD MAYNOR BLACKSTOCK,

---

[8]SEE: excerpts from NATIONAL TAXPAYER ADVOCATE 2005 ANNUAL REPORT TO CONGRESS, attached and incorporated by reference.

CASE NO. 06-CR-62-TCK[9]. Exhibit 2. According to Dean's sworn testimony, IRS can "get access to any records that are filed anywhere in the United States." Records Custodian Dean's testimony establishes that records can be "gathered" in a matter of moments, certainly within a day; it is incomprehensible that it could take an additional 182 days to review those records.

## THE REGULATION EXCEEDS THE AUTHORITY OF THE STATUTE

In construing 7433's current incarnation, the starting point must be the language employed by Congress. In *Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997), the Court stated, as it has before:

> Our first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. Our inquiry must cease if the statutory language is unambiguous and "the statutory scheme is coherent and consistent." United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 240 (1989); see also Connecticut Nat. Bank v. Germain, 503 U.S. 249, 253-254 (1992). [519 U.S. 341]

See also: *Reiter v Sonotone Corp.*, 442 US 330, 337, 60 L Ed 2d 931, 99 S Ct. 2326 (1979) and the courts must assume that the legislative purpose is expressed by the ordinary meaning of the words used. *Richards v United States*, 369 US 1, 9, 7 L Ed 2d 492, 82 S Ct. 585 (1962). 7433's current language must ordinarily be regarded as conclusive, *Consumer Product Safety Comm'n v GTE Sylvania, Inc.*, 447 US 102, 108, 64 L Ed 2d 766, 100 S Ct. 2051 (1980), and unless Congress has clearly indicated that its intentions are contrary to the words it employed in the statute, this is the ending point of interpretation. *Fuller v. United States*, 615 F. Supp. 1054 (D.C. Cal 1985; quoting Richards

---

[9] See: TRANSCRIPT OF PROCEEDINGS, JUNE 19, 2006, p.4, lines 3 through 10.

v. United States, supra.

TBOR III, found in section 3102 of the IRS Restructuring and Reform Act of 1998, specifically omits the "prior exhaustion" requirement previously found in TBOR I. Section 7433, as re-amended by TBOR III, is <u>silent</u> with respect to bringing or maintaining a 7433 action, and <u>silent</u> on the issue whether exhaustion must be pleaded. The revision states no more than "...no judgment shall be awarded unless the Court <u>determines</u> that administrative remedies <u>available</u> have been exhausted." Treasury Decision 9050 purports to completely thwart the Court's jurisdiction ("no suit may be maintained") in excess of the statutory mandate. To that extent, the "amendment" of the regulation in Treasury Decision 9050 exceeds the reach of the statute. (Emphases added)

As noted above, "unless the court determines" relates to a factual issue, within the province of a jury; the factual determination necessarily includes the extent to which any administrative remedy is "available".

AVAILABILITY OF REMEDY

A comprehensive history of IRC § 7433 was published by the American Bar Association, and Plaintiff respectfully directs the Court's attention to what the Bar had to say about the re-amendment:

> "[F]ew pro se plaintiffs have actual notice of the process established by Treasury Regulation section 301.7433-1. Congress should understand many people's distrust of the ability of the IRS to proceed with their claims..."

As discussed below, the Bar's recognition that "few pro se plaintiffs have actual notice of the process" directly addresses "availability" of remedy, as shown by IRS' published policy regarding return of amounts unlawfully collected. Internal Revenue

Service Policy P-5-36, published in the Internal Revenue Manual, at 1.2.1.5.9, is to refrain
from returning amounts unlawfully collected.  P-5-36 states:

> "(1)    Returning money wrongfully collected: This Policy Statement has been
> revoked."

Thus, even if IRS has collected unlawfully, and knows it, whatever Policy might have
existed was revoked.  The administrative remedy of filing a claim to recover unlawfully
collected amounts is clearly unavailable when the Service Policy on such matters has been
revoked.

## REGULATION IMPERMISSIBLY CONVERTS DAMAGES ACTION INTO REFUND ACTION

By requiring that Plaintiff(s) (claimants) place a specific value upon injuries claimed,
the regulation effectively neuters the statutory provision in instances where, as alleged in
Plaintiff(s) complaint, IRS denies a meaningful Collection Due Process Hearing; a
"collection" might not yet have occurred, yet Plaintiff's right to challenge the existence of
the underlying liability - established in the statutory provision (6330(c)(2)(B)) - is thwarted.

## THE REGULATION FRUSTRATES CONGRESS' INTENT

TBOR I, TBOR II, and TBOR III (RRA '98, § 3102) are testaments of Congress'
awareness that IRS cannot be trusted to administer the tax code without supervision.
Indeed, in the words of former Deputy Assistant Secretary of Treasury Bradford DeLong,
now a Professor at University of California, Berkeley,

> "The IRS's comparative advantage is using random terror to elicit voluntary
> compliance with the tax code…".

Congress intended that Citizens harmed by IRS' legendary disregard of governing

statutes and regulations have an avenue to be made whole. Once again, the Congressional "key" is <u>availability</u> of the administrative remedy. If the Court makes a factual determination (province of the jury) that an administrative remedy is effectively unavailable, it need not be pursued.

The Supreme Court in *Morton v. Ruiz*, 415 U.S. 199 (1974), opined, at 235:

> Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures. This is so even where the internal procedures are possibly more rigorous than otherwise would be required. Service v. Dulles, 354 U.S. 363, 388 (1957); Vitarelli v. Seaton, 359 U.S. 535, 539-540 (1959).

As established in the Code of Federal Regulations, IRS refused to even establish procedures for four years after the right to bring an action was granted by Congress, and currently imposes a prohibitive provision omitted by Congress. Administrative remedy, arguably available in form, is effectively unavailable in substance, as evidenced by Exhibits 3 through 9, Treasury Inspector General Tax Administration reports, mandated in RRA '98, section 1102, failing to show a single instance of IRS granting an administrative claim for damages. The TIGTA Reports, spanning at least 5 years, are attached and incorporated by reference.

As stated by the *Morton Court*:

> The agency power to make rules that affect substantial individual rights and obligations carries with it the responsibility not only to remain consistent with the governing legislation, *FMC v. Seatrain Lines, Inc.*, 411 U.S. 726 (1973); *Dixon v. United States*, 381 U.S. 68, 74 (1965); *Brannan v. Stark*, 342 U.S. 451 (1952), but also to employ procedures that conform to the law. See *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 764 (1969) (plurality opinion).

Treasury Decision 9050 fails to remain consistent with P.L 105-206 section 3102,

*FMC v. Seatrain Lines, Inc., Dixon v. United States, Brannan v. Stark,* and the procedures therein fail to conform to the law. *NLRB v. Wyman-Gordon Co.*

Lack of specific attention to the statutory authorization is especially important in light of the Supreme Court's pronouncement in *Skidmore v. Swift & Co.,* 323 U.S. 134, 140 (1944), quoted in *Adamo Wrecking Co. v. United States,* 434 U.S. 275, 287 n. 5 (1978), and cited in *SEC v. Sloan,* 436 U.S. 103 (1978), specifying that factors to be considered in giving weight to an administrative ruling include "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *SEC v. Sloan,* 436 U.S. 103, 117-118.

The regulation itself is the best evidence of "Lack of specific attention to the statutory authorization" (Skidmore) and failure of "thoroughness...in its consideration" (Sloan). In 301.7433-1's subsection (a), "An action for damages...may not be maintained...", notwithstanding Congress' omission of a "prior exhaustion" requirement; paragraph (1) thereof changes, "reckless or intentional actions" to "reckless or international actions..." (emphasis added).

Treasury Decision 9050 fails to remain consistent with P.L 105-206 section 3102; the procedures therein fail to conform to the law, and the regulation fails "all those factors which give it power to persuade." *SEC v. Sloan,* 436 U.S. 103, 117-118.

Reviewing courts are not obliged to stand aside and rubber-stamp their affirmance of administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute. Such review is always properly

within the judicial province, and courts would abdicate their responsibility if they did not fully review such administrative decisions. *National Labor Relations Board v. Brown*, 380 U.S. 278, 291-292.

## QUESTION PRESENTED ON PREJUDICIAL FOOTNOTE

Are "general allegations", in the context of the Fed.R.Civ.P 8(a) "notice Pleadings" Rule, as interpreted in *Conley v. Gibson*, 355 U.S. 41, and reiterated in *Jones v Bock,* __ U.S. _____, (Decided: January 22, 2007) (purportedly made by a multitude of Plaintiffs), sufficient to establish a presumption of a pattern of unlawful activity?

## DISCUSSION

Defendant, by and with the assistance of counsel, and the concurrence of the court raised by footnote the issue that the allegations in the instant case are similar, if not identical, to dozens of other cases filed to this Court. Plaintiff, concerned only with the instant case, asserts that any alleged similarity of allegations in other cases is irrelevant in respect of the instant case, and draws the Court's attention to the fact that the alleged redundancy of such "general allegations", especially in the numbers asserted by defense counsel, strongly indicates a pattern of unlawful activity on the part of defendant's agency. As contemplated in the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961(5):

> (5) "pattern of racketeering activity" requires at least two acts of racketeering activity[10], one of which occurred after the effective date of this chapter and

---

[10] As used in Title 18, Chapter 96-
(1) "racketeering activity" means (A) any act or threat involving...extortion; (B) any act which is indictable under ... title 18, United States Code: section 1028 (relating to fraud and related activity in connection with identification documents), section 1341 (relating to mail fraud),

the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity

Acts generally complained of in the Verified Complaint in the instant case arguably include, or necessarily lead, if true, to the requisite two (2) acts listed in 18 U.S.C. § 1961(1), such as 1) extortion, in forcing Plaintiff to make financial "arrangements" to avoid attack on property, and acts indictable under Title 18, United States Code: §§ 1028, 1341, 1343, 1344, 1503, 1510, 1511, 1512, 1513, and 1951, if committed by any other person, 18 U.S.C. § 1961(3) or enterprise 18 U.S.C. § 1961(4).

If, as defendant asserted, this case is "one of over 70 known cases", is the Court not obligated to refer such apparent pattern of activity for investigation?

## QUESTION PRESENTED

Was counsel's assertion with respect to the Anti-Injunction Act (AIA) a fraud upon the Court?

## DISCUSSION

Counsel asserted (and the Court accepted the assertion) that the AIA prohibits the Court from enjoining defendant's agents/agency from *further* disregarding statute(s) and regulation(s) in exercising delegated authority.  As noted by  by the Honorable Colleen

---

section 1343 (relating to wire fraud), section 1344 (relating to financial institution fraud),  section 1503 (relating to obstruction of justice), section 1510 (relating to obstruction of criminal investigations), section 1511 (relating to the obstruction of State or local law enforcement), section 1512 (relating to tampering with a witness, victim, or an informant), section 1513 (relating to retaliating against a witness, victim, or an informant), sections 1581-1591 (relating to peonage, slavery, and trafficking in persons), section 1951 (relating to interference with commerce, robbery, or extortion), section 1952 (relating to racketeering) ...(F) any act which is indictable under the Immigration and Nationality Act, section 274 (relating to bringing in and harboring certain aliens),

Koller-Kotelly in *Larue v. United States*, (DDC 06-61),

The Anti-Injunction Act provides, in relevant part:

Except as provided in sections 6015(e), 6212(a) and (c), 6213(a), 6225(b), 6246(b), 6330(e)(1), 6331(i), 6672(c), 6694(c), 7426(a) and (b)(1), 7429(b), and 7436, no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.

26 U.S.C. § 7421(a).

*Larue* also reiterated that the Anti-Injunction Act "could scarcely be more explicit"

(quoting Bob Jones Univ. v. Simon, 416 U.S. 725, 736, 94 S. Ct. 2038,40 L. Ed. 2d 496

(1974)).

Plaintiff specifically alleged in the Verified Complaint that defendant failed to provide

Notice of Deficiency in accordance with IRC § 6212, arguably "within the rubric of 26

U.S.C. § 6212(a), which states:

"If the Secretary determines that there is a deficiency in respect of any tax imposed by subtitles A or B or chapter 41, 42, 43, or 44, he is authorized to send notice of such deficiency to the taxpayer by certified mail or registered mail. Such notice shall include a notice to the taxpayer of the taxpayer's right to contact a local office of the taxpayer advocate and the location and phone number of the appropriate office."

*Larue v. United States*, (DDC 06-61).

Plaintiff specifically alleged in the Verified Complaint that defendant failed to give

notice of the last day for filing for redetermination of such phantom deficiency in

accordance with IRC § 6213, arguably "within the rubric" (*Larue*) of 26 U.S.C. § 6213(a).

Section 6213(a) provides that "[n]otwithstanding the provisions of section 7421(a), the

making of such assessment or the beginning of such proceeding or levy during the time

such prohibition is in force may be enjoined by a proceeding in the proper court[.]" 26

U.S.C. § 6213(a).

Plaintiff specifically alleged in the Verified Complaint that defendant failed to afford Plaintiff a meaningful Collection Due Process in accordance with IRC 6230/6330.

At least three of the Anti-Injunction Act's exceptions apply to allegations contained in my Verified Complaint.

Plaintiff contends that defendant's Anti-Injunction Act argument, in the face of clear exceptions to the operation of the AIA, was fraudulently intended to "reinstate" the failed subject matter jurisdiction argument in spite of the Supreme Court's *Arbaugh* decision.

## EXHAUSTION REQUIREMENT

Plaintiff has exhausted all available administrative remedies by sending a Verified Administrative Claim to the Internal Revenue Service, Area 10, Area Director Dallas, 4050 Alpha Road, 1000 MSRO, Dallas, TX 75244 , Attn: Compliance Technical Support Manager, received by the IRS on July 21, 2006, Cert. Mail #70060100000048671110. More than 6 months have passed and plaintiff has not received a response. Therefore the aforementioned Verified Administrative Claim is deemed denied. The aforementioned claim meets all requirements of the regulation[11]. Thus. Plaintiff's standing and this court's subject matter jurisdiction over plaintiff's complaint are established pursuant to the IRS' denial of plaintiff's administrative claim. Such denial constitutes an express waiver of defendants' sovereign immunity and a specific invitation for plaintiff to bring this action pursuant to 26 U.S.C. §7433.

---

[11] Pursuant to the aforementioned Verified Administrative Claim plaintiff(s) has/have exhausted all available administrative remedies and is/are officially barred from any further administrative appeal, review, relief and/or remedy.

Based upon the foregoing, Plaintiff respectfully seeks relief from Order of November 17, 2006, dismissing the above-captioned action and a finding that the regulation is not in conformity with the statute and is therefore unenforceable.

Respectfully Submitted

Dated _March 20 th_, 2007

Jack D Thrasher

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the forgoing on:

Pat S Genis
U.S. Dept of Justice
P.O. Box 277
Washington D.C. 20044

Dated _March 21 st_, 2007

Jack D Thrasher